IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SCOTT S.,                                    :
                                             :
            **Plaintiff,**                   :
                                             :
     v.                                      :    **Case No. 2:25-cv-00507**
                                             :    **Judge James L. Graham**
                                             :    **Magistrate Judge S. Courter M. Shimeall**
COMMISSIONER OF                              :
SOCIAL SECURITY,                             :
                                             :
            **Defendant.**                   :

## REPORT AND RECOMMENDATION

Plaintiff, Scott S., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for social security disability insurance benefits ("DIB").  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 9).  For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.    PROCEDURAL HISTORY

Plaintiff applied for DIB on November 17, 2022, alleging disability as of February 11, 2021, due to a compression fracture of his L3 vertebra.  (ECF No. 7-5, PAGEID ##: 208–14; ECF No. 7-6, PAGEID #: 258.)  Plaintiff's application was denied initially on August 16, 2023, and upon reconsideration on November 27, 2023.  (ECF No. 7-3 PAGEID ##: 92–93.)

1

Thereafter, Plaintiff appeared with counsel before an administrative law judge ("ALJ") on May 1, 2024.  (ECF No. 7-2, PAGEID ##: 61–86.)  On May 14, 2024, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id.* at PAGEID ##: 45–60.)

The ALJ found that Plaintiff meets the insured-status requirements of the Social Security Act through September 30, 2021, and applied the five-step sequential process to evaluate his DIB application.[1]  (ECF No. 7-2, PAGEID #: 50.)

- Step One: The ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of February 11, 2021, through his date last insured of September 30, 2021.  (*Id.*)

- Step Two: Through the date last insured, Plaintiff had the following severe impairments: spinal compression fractures; degenerative disc disease; and chronic pain syndrome.  (*Id.*)

- Step Three: Through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (*Id.* at PAGEID #: 51.)

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except frequent climbing ramps/stairs, stooping, kneeling, crouching, crawling; occasional climbing ladders/ropes/scaffolds; no exposure to moving mech parts, unprotected heights; no commercial driving; can understand, remember, and carry out simple tasks.

(ECF No. 7-2, PAGEID #: 52.)

- Step Four: The ALJ determined that Plaintiff has no past relevant work. (*Id.* at PAGEID #: 54.)

- Step Five: The ALJ concluded that, through the date last insured—when considering his age, education, work experience, and RFC, and in reliance on the Vocational Expert's testimony—there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, such as a housekeeping cleaner, merchandise marker and routing clerk. (*Id.* at PAGEID ##: 55–56.)

The ALJ therefore concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, at any time from February 11, 2021, the alleged onset date, through September 30, 2021, the date last insured. (*Id.* at PAGEID #: 56.) The Appeals Council denied Plaintiff's request for review on March 28, 2025. (*Id.* at PAGEID ##: 28–32.) This appeal followed.

## II.     RELEVANT RECORD EVIDENCE

The Undersigned has reviewed the portions of the administrative record relevant to the claimed errors raised by Plaintiff. Rather than summarizing that information here, the Undersigned will refer and cite to it as necessary in the discussion of the parties' arguments below.

### III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices [Plaintiff] on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.    ANALYSIS

In Plaintiff's single assignment of error, he contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ did not rely upon a medical opinion.  (ECF No. 9, PAGEID ##: 541–45.)  For the reasons that follow, the Undersigned finds no merit in Plaintiff's arguments and concludes the ALJ's RFC determination was supported by substantial evidence.

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from [his] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  To that end, an ALJ "is only required to include in the [RFC] those limitations he finds credible and supported by the record." *Beckham v. Comm'r of Soc. Sec.*, No. 1:19-cv-576, 2020 WL 5035451, at *7 (S.D. Ohio Aug. 26, 2020) (quoting *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020)).

The ALJ, "when determining the [RFC] of a claimant, has 'discretion to seek additional or clarifying information' if the information on the record is insufficient." *Ashley B. v. Comm'r of Soc. Sec.*, No. 1:23-CV-690, 2025 WL 957561, at *2 (S.D. Ohio Mar. 31, 2025) (citing 20 C.F.R. § 416.920b); *see also Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) ("An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary.")).  "The process gives exclusive control over the consideration of evidence to the ALJ and does not mention any requirement of an ALJ to request a medical opinion for every piece of evidence." *Ashley B.*, 2025 WL 957561, at *2 (citing 20 C.F.R. § 416.920b).  "Ultimately, the responsibility for determining a plaintiff's RFC rests with the ALJ, not a physician." *Tina R. v.*

5

*Comm'r of Soc. Sec.*, No. 1:25–CV–00339, 2026 WL 322668, at \*8 (S.D. Ohio Feb. 6, 2026) (citing

*Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009); *Rudd v. Comm'r Soc. Sec.*, 531

F. App'x 719, 728 (6th Cir. 2013)).  Thus, contrary to Plaintiff's suggestion, the regulations do not

impose a categorical duty on the ALJ to obtain a medical opinion in every case.

Plaintiff argues that the ALJ erred by formulating the RFC without a medical opinion.

Plaintiff relies on *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 914 (N.D. Ohio 2008), for

the proposition that the ALJ's RFC determination must be supported by at least one medical

opinion.  (ECF No. 9, PAGEID #: 542.)  In *Deskin*, the District Court for the Northern District of

Ohio held that "where the transcript contains only diagnostic evidence and no opinion from a

medical source about functional limitations (or only an outdated nonexamining agency opinion), to

fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source,

order a consultative examination, or have a medical expert testify at the hearing."  605 F. Supp. 2d

at 914.

"This Court and others have strongly criticized the implications of *Deskin* and its progeny

as going beyond what is required of the ALJ under the Social Security regulations and Sixth Circuit

precedent."  *Tina R.*, 2026 WL 322668, at \*9 (collecting cases).  Even courts that apply *Deskin*

have recognized that "*Deskin* potentially applies in only two circumstances."  *Robert D. v. Comm'r*

*of Soc. Sec.*, No. 3:23-CV-001, 2023 WL 4348871, at \*6 (S.D. Ohio July 5, 2023), *report and*

*recommendation adopted sub nom. Robert D. v. Comm'r of Soc. Sec. Admin.*, No. 3:23-CV-1, 2023

WL 5002369 (S.D. Ohio Aug. 4, 2023).  "First, *Deskin* matters where an ALJ made an RFC

determination based on no medical source opinion. Second, *Deskin* applies where an ALJ made an

RFC based on an 'outdated' medical source opinion 'that does not include consideration of a critical body of objective medical evidence.'" *Id.* (internal citation omitted) (quoting *Kizys v. Comm'r of Soc. Sec.*, No. 3:10-cv-25, 2011 WL 5024866, at *2 (N.D. Ohio Oct. 21, 2011)). Plaintiff contends that the first circumstance applies here because the ALJ did not rely on a medical opinion when crafting the RFC.

Even assuming *Deskin* applies here, "remand is not automatic." *Lonnie F. v. Comm'r of Soc. Sec.*, No. 2:23-CV-890, 2024 WL 3506946, at *4 (S.D. Ohio July 23, 2024). "[U]nder the *Deskin* rule, the ALJ 'retains discretion to impose work-related limitations without a proper source opinion where the medical evidence shows relatively little physical impairment and the ALJ can render a commonsense judgment about functional capacity.'" *Ashley B.*, 2025 WL 957561, at *2 (quoting *Kizys*, 2011 WL 5024866, at *2). "[T]he 'key inquiry" when deciding whether to remand under *Deskin*, is whether the ALJ 'fully and fairly developed the record through a conscientious probing of all relevant facts.'" *Robert D.*, 2023 WL 4348871, at *5 (citing *Bryant v. Comm'r of Soc. Sec.*, No. 3:15-CV-354, 2017 WL 489746, at *3–5 (S.D. Ohio Feb. 7, 2017)).

The Court is satisfied that the ALJ fairly developed the record by probing the relevant facts here. In particular, the ALJ discussed Plaintiff's medical history relating to his chronic pain, including imaging and treatment records. (ECF No. 7-2, PAGEID ##: 53–54.) The ALJ observed that "[a]lthough there are no records in the file during the period considered, some records do show the old compression fracture that dated back prior to the DLI." (ECF No. 7-2, PAGEID #: 53.) For example, the ALJ noted that Plaintiff's "November 2022 MRI of the lumbar spine showed an old compression fracture at T10 with approximately 75% loss of vertebral body height and a chronic

L4 superior endplate fracture" and that "[t]here was mild central spinal canal narrowing at L4-L5." (*Id.* (citing ECF No. 7-7, PAGEID ##: 357–60).)  He further noted that "[a] CT scan of [Plaintiff's] lumbar spine showed central posterior disc protrusion at L4-L5 without significant central stenosis."  (*Id.* (citing ECF No. 7-7, PAGEID #: 360).)  The ALJ also observed that "[i]n January 2023 [Plaintiff] received a medical marijuana card to deal with chronic pain."  (*Id.* (citing ECF No. 7-7, PAGEID ##: 355–56).)

Ultimately, the ALJ summarized his findings regarding Plaintiff's physical impairments in this way:

> It appears that the claimant, per his testimony, injured his back in 2019, significantly prior to the alleged onset date. He then sought no treatment during the 2021 period at issue and did not seek treatment until late 2022, when he injured his back hunting. But even then, exams were primarily normal, and he was treated highly conservatively. Neither his treatment seeking, conservative care, objective findings (exam and imaging), or even his activities such as hunting support limitations nearly as severe as alleged. There is also no significant support for his allegations of concentration/balance issues.

(ECF No. 7-2, PAGEID ##: 53–54.)

In other words, the ALJ determined that there is a lack of evidence that Plaintiff's impairments were disabling.  "This lack of disability evidence is substantial evidence for the ALJ's finding that [Plaintiff] failed to meet his burden of proving disability."  *Winans v. Comm'r of Soc. Sec.*, No. 5:22-CV-01793, 2023 WL 7622634, at *4 (N.D. Ohio Nov. 15, 2023) (noting that a Plaintiff's "lack of any meaningful treatment history undermines [his] claim that [his impairments] were disabling").  Given the substantial evidence supporting the ALJ's finding that Plaintiff was not disabled, the ALJ was not required to request a consultative examination or obtain an additional medical opinion to make the disability determination.  *See id.*

8

Further, the ALJ built an adequate logical bridge between the evidence and the limitations he adopted in the RFC.  The ALJ explained that "[Plaintiff's] complaints have not been completely dismissed, but rather, have been included in the [RFC] assessment, to the extent that they are consistent with the evidence." (ECF No. 7-2, PAGEID #: 54.)  The ALJ articulated how he derived the physical limits he included in Plaintiff's RFC as follows:

> [Plaintiff] is limited to work at a light exertional level due to his degenerative disc disease, compression fracture and chronic pain syndrome. Symptoms and complaints related to these conditions are also considered in limitations regarding climbing, postural movements, and exposure to workplace hazards. Possible distraction due to pain, was also considered regarding lack of exposure to common workplace hazards as well as a limitation to carry out simple tasks. In view of all the factors discussed above, these limitations on the [Plaintiff's] capacities are considered warranted, but no greater or additional limitations are justified.

(*Id.*)

Plaintiff does not argue that the ALJ erred in any part of this analysis, such as by cherry-picking records or not properly evaluating plaintiff's symptoms under applicable regulations. Rather, Plaintiff's core argument is simply that the ALJ's analysis was incomplete.  Specifically, Plaintiff contends that the ALJ had a duty to develop the record because the record contained "diagnostic evidence in the form of CT scans and MRIs that cause significant limitations from pain and Plaintiff's ability to work." (ECF No. 9, PAGEID #: 544.)  In other words, Plaintiff argues that such diagnostic evidence required the ALJ to obtain medical opinion evidence.

Plaintiff is correct that "ALJs are generally unqualified to interpret 'raw medical data' and make medical judgments concerning reasonable limitations." *Lonnie F.*, 2024 WL 3506946, at *3. Raw medical data, however, generally includes testing such as x-rays, MRI images, or an EMG. *Id.* (collecting cases).  "Treatment notes or reports from medical professionals following various

testing, on the other hand, are not considered raw medical data beyond the ALJ's expertise." *Id.* That said, the medical reports Plaintiff references are not "raw medical data." Both the CT scan and the MRI that the ALJ cites in his opinion were interpreted by physicians in the reports. *See, e.g.*, *Rudd*, 531 F. App'x at 726–27 (finding no error where ALJ relied on radiologist's interpretation of x-rays without the further assistance of a medical expert, stating that while the x-rays were raw medical data, the radiologist's report was not). Accordingly, there is no merit to Plaintiff's argument that the ALJ erred by interpreting diagnostic evidence.

Plaintiff also notes that "the state agency medical consultants at the initial and reconsideration levels found insufficient evidence to craft an RFC." (ECF No. 9, PAGEID #: 543.) As the ALJ observed, both state agency medical consultants "opined [that] there was insufficient evidence in the record to form an opinion about his functional abilities and/or limitations." (ECF No. 7-2, PAGEID #: 54.) Unlike the state agency reviewers, the ALJ had the benefit of Mr. Southworth's testimony about his activities and thus concluded that "that the record is now sufficient, including hearing testimony, to render a decision in this case." (*Id.*) Thus, "the record shows the ALJ had the missing piece 'demonstrating [a claimant]'s functional abilities' that the state agency reviewers lacked, so the ALJ could properly forego a medical opinion under *Deskin*." *Lantz v. Comm'r of Soc. Sec.*, No. 1:25-CV-01126-CAB, 2026 WL 999936, at *6 (N.D. Ohio Apr. 14, 2026) (quoting *Falkosky v. Comm'r of Soc. Sec.*, No. 1:19-cv-2632, 2020 WL 5423967, at *8 (N.D. Ohio Sept. 10, 2020)).

Moreover, "the burden to prove his case lies with Plaintiff, not the ALJ." *Lonnie F.*, 2024 WL 3506946, at *6. "That is, while an ALJ must ensure that a [Plaintiff] receives a 'full and fair

hearing,' the ultimate burden of proving entitlement to benefits lies with the [Plaintiff]." *Id.* (quoting *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563 (6th Cir. 2022)).  "It is only under 'extreme circumstances' that the ALJ could be said to have a 'special duty' to help develop the record," including when "'a claimant is (1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures.'" *Id.* (quoting *Moats*, 42 F.4th at 563–64).  Here, Plaintiff was represented by counsel and has not shown that his case presented an "extreme" situation in which the ALJ had a heightened duty to develop the record.  In fact, Plaintiff's counsel did not request a physical consultative examination before or during the hearing before the ALJ and represented to the ALJ at the hearing that the record was "[c]omplete to the best of [his] knowledge."  (ECF No. 7-2, PAGEID #: 65;) *see Owens v. Berryhill*, No. 18-cv-1043, 2019 WL 2465229, at *13 (N.D. Ohio Feb. 13, 2019) (finding that the ALJ's RFC was supported by substantial evidence and that, "[m]oreover, Owens, who was represented by counsel at the hearing, did not request a consultative examination or otherwise suggest the medical record was insufficient for the ALJ to make a disability determination"), *report and recommendation adopted*, 2019 WL 1929695 (N.D. Ohio Apr. 30, 2019).

The ALJ fairly developed the record by probing the relevant facts such that no additional medical opinion evidence was necessary.  Further, the Sixth Circuit has "rejected the argument that a[n] [RFC] determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ." *Mokbel-Alijahmi v. Comm'r of Soc. Sec.*, 732 Fed. App'x 395, 401 (6th Cir. 2018).  "All that is required is that the ALJ make a connection between the evidence relied on and the conclusion reached." *Lonnie F.*, 2024 WL 3506946, at *6.  The ALJ

made that connection here with respect to Plaintiff's RFC by discussing Plaintiff's treatment history, imaging, and activities, and explaining why they did not support the alleged limitations. Accordingly, the Undersigned concludes that the ALJ's RFC determination is supported by substantial evidence.

## V.  CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Based on the foregoing, it is therefore **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED,** and that the Commissioner's decision be **AFFIRMED.**

## VI.  PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816*,* 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district

court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . ." (citation omitted)).

     **IT IS SO ORDERED.**

                                               */s/ S. Courter M. Shimeall*
                                             **S. COURTER M. SHIMEALL**
                                             **UNITED STATES MAGISTRATE JUDGE**